May it please the Court, Sanford Weisburst for Plaintiff Appellant PACT. I'd like to begin with the 301 patent. The District Court in Appendix 22-23 stated that capability of executing a function doesn't mean the product infringes. That is contrary to this Court's precedent, including Fingen, where this Court stated... But you didn't raise the capability argument. We did raise the capability argument. I'd like to point specifically where in the record that we did so. I'd refer the Court to Appendix 14-685, which is our opposition memorandum in opposition to summary judgment, as well as Appendix 14-7. Wait a minute, let's take it one at a time. Yes, take it one at a time. What's the first reference? 14-685. That's the paragraph in your opposition to summary judgment, where you don't really say, it doesn't matter whether it actually does it. You don't say that. That's the problem with that paragraph. I would say the problem with that paragraph is a different problem, which is that it's a grammatically incorrect... That would be a problem. Yes, and here's the answer to that problem. The sentence is a bit ambiguous. It says, it talks about whether ... It says, Dr. Conte, I'm paraphrasing, testified that Intel's products, and then it said sequentially processing data. There's a missing word there, but we cited Dr. Conte's expert report, and I'd like to give you another reference, 24-315. 24-315. That is Dr. Conte's same value. Yes. That's not exactly arguing capability. It is, because Dr. Conte said that Intel's products can be used to process data. Maybe he said that, but you didn't say it in the opposition. It's the problem. Granted, it's not a perfect situation, but I would similar situation of did a party preserve or not an argument. The party there had cited its expert report, and this court was willing to look at the portions of the expert report that were cited to determine whether the argument was preserved. It was not preserved in that case. It was here, because 24-315 we submitted is clear on this point. Beyond that brief in the Conte report, however, I want to refer to Appendix 14-720. Now, this is our response to Intel's statement of material facts, as to which there is allegedly no dispute, and just... Look, I think I'm remembering this right. That does give you more. The problem is in the place in the legal contention that you needed to say, here's the reason the other side is wrong about summary judgment, you don't say it doesn't matter whether Intel's processors actually do it. You just don't say that. We don't say it precisely enough. Except if this court should, as we submit, consider Conte. But I want to go back. I think the statement is important, Judge Taranto, for the following reason. A principle on summary judgment is that the opponent of a summary judgment motion only has to respond to the assertions that are made in the motion. And I think it's really important to focus in on what assertion Intel made in its motion. And this is Paragraph 3 of its statement, Appendix 14, 720. The assertion that they made was that Intel's products process instructions, period. And they may have cited some evidence as well. But it was not an assertion that Intel's products are not capable of processing data. How do you... How is it possible that you don't have to say, that assertion is immaterial to our ability to survive summary judgment? It doesn't matter whether they do or don't. As long as they can. Respectfully, I submit that we did say that. Again, what they said is Intel's products... If we disagree with you, you lose, right? Well, on the 301, but let me just finish my answer to this and then I will move on to the 593. Yes, if you're wrong. If we conclude that you didn't raise it, you lose. We would lose in that case. But just one final point on why we did raise it. In the response, so Intel's statement again is Intel's products process instructions, period. We responded that the fact that some thing processes instructions does not mean that it cannot process data as well. And cannot process data is, we respectfully submit, a reference to this capability idea. So we do think you should judge what we said in the context of what they said. And in the context of what they said, we both responded that it's not mutually exclusive to process instructions and to process data. You can do both. And we said, doesn't mean that we cannot process data. So we did actually make the capability argument. I'd like to move to the 593 argument. This is a case where I want to first start out just by orienting ourselves. And I think it may be helpful to have a couple of pages of the blue brief in mind as I make this argument. Blue brief, page 11, is a annotation that we prepared of an Intel document. And it shows an Intel product. And it's got a line that's going across. And just, that figure is secret. The, yes. And I'm, I'm, I'm going, I'm, I'm going to. Mark in blue, so blue is your version of. Yes, I think I'm going to describe the document consistent with the words in the district court opinion that are public. I'm going to try to do that. But what you have in that document, it's our position, is a portion represented by a bump in the middle. Right. That is an exclusive segment that is only for the processor and the memory unit that are paired. And then you've got another line in the document that is shared. And we analogize this, and this is blue brief three, to a highway with an overpass. The overpass is the exclusive portion. The highway is the shared portion. The local roads are shared as well. And the question before this court and before the district court is, does it, is it enough that there's an exclusive segment somewhere on that path in order to bring it within the claim physically dedicated connection? That's the key word of the problem. Subject to your last little argument about the, the two endpoints is that even on your highway overpass thing, there's pieces at the processor end and the memory end that are shared. You have, you have this little argument about how they're not really part of the path. So, and that's why you, you say your main argument is that as a matter of claim construction or something, the, the, as long as it's not enough for there to be a segment in the middle that is, is, is, is I guess not shared.  Why in this context would that make any sense? Isn't the point of the dedicated connection that I can get from A to B without any traffic jam? And it doesn't matter where that traffic jam would be. It might just be 10 feet in the, I'm using 10 feet, in, in the middle. It doesn't have to be on the whole thing. But the point of the dedicated connection that's required by the claim is that nobody's interfering anywhere from A to B. Why is that not right? So, so yes, the point, the ultimate purpose, and this is column two of the patent, is indeed to reduce waiting time, to reduce latency by creating this special connection between the two units. I'd refer, to answer that question, let me try to refer to figure seven of the patent, appendix four, 143. And that is a depiction of a memory unit in the, in an embodiment of the patent. Of course, embodiments are presumed to practice the patent. And if you look on the left side, upper left and the bottom left, you'll see a single data input going into the memory unit and a single data output. Those necessarily have to be shared by everything in the schematic. So the patentee understood that there would, in fact, and we of course, as, as your Honor, Judge Toronto noted, we call that an interface. That's a separate argument that we make. But it's necessary that that last piece is shared. And yet the patentee viewed it as, as satisfying the definition, physically dedicated connection. Now, the district court itself also agreed with us the first time around. And this is at appendix nine. District court denied summary judgment by saying that, hey, there are separate paths. Reasonable jurors could find that there are separate paths. Intel disagrees. We got to put this to the jury. The only reason, as we understand it, that the district court changed its view by the second order was based on prosecution history disclaimer. I'd like to address that before I sit down. We think the judge was wrong. It's a very demanding standard. It requires clear and unmistakable evidence of disclaimer, as the court knows. No, I mean, that's not the only thing that you use the prosecution history for. You use it to interpret the patent. However one uses it, although we disagree with Intel on that point, we do think that there is this high standard for a reason. But let me point to what I think is... No, the bill itself is explicit. You use the classification, prosecution history to interpret the patent. It doesn't say it has to be disclaimer. Well, here's the key point, regardless of how the court views it. At appendix three... So the district court believed, apparently, it was a little unclear from the decision that a portion of it being shared would be enough to take something outside the scope of the patent and not satisfy physically dedicated. The district court did not consider all the statements in the prosecution history. Refer the court to appendix 33958, which is one page after the Foo diagram. Foo is the prior art. And the point that Pact was making there is that all segments in Foo are shared. So Pact didn't have a reason to get into this distinction of at least one versus many segments. The prior art it was distinguishing all were shared. I'd like to read this sentence from appendix 33958, a connection of any of the processors to any of the memories requires use of a data path of the FCU that is also equally used by other processors for connection to the memories, so that the connection cannot be considered dedicated. The district court did not address that sentence. There's a similar sentence at 33955. And the point here is that Pact was focused not on this at least one versus more segments question. It was focused on the examiner's misapprehension of what the word dedicated means. The examiner thought dedicated means direct. It doesn't have to mean uniquely for a pair. Just a direct line between two elements. And that's what we were addressing in that prosecution history. We didn't have occasion to get into this distinction that was later used against us. And in fact, we made statements, the one I just read. Just to be clear, in that sentence, you're giving a particular meaning to the phrase use of a data path? Yes. So I think you're suggesting it means the very same data path from beginning to end? From beginning to end. We think that that sentence... If there are two different processors, say one memory, it's not possible that the entire data path from location one to the memory is the same as location two to the memory because location one is different from location. It can't possibly mean the entire path, can it? If you had two adjacent processors, it would be... And this is the diagram at 33957. It's really close. It's basically a grid. But whether any two units share the same path, you can always find some other, either BDU, it's called, or another processor that shares some of that path for the entire thing so that every segment in who we submit is shared. And that's why we didn't have occasion to distinguish that. Again, our focus was on the word dedicated and whether that means direct versus uniquely devoted. If the court will permit me, I'll save the rest of my time. Mr. O'Quinn. Thank you, Judge Dike. And may it please the court, John O'Quinn on behalf of Intel. The district court properly granted summary judgment as to both the 301 and the 593 patents. As the district court observed, PACT created a moving target on many issues, first in the PTO, then in the district court, and even now on appeal. But however viewed, there's no material evidence that Intel's microprocessors infringe and this court should affirm. I'll just very briefly address the 301 patent unless the court has questions about that. But the only argument that PACT made in its opening brief is that the relevant claim limitation is directed to mere capability, asserting that that's the same thing that it argued to the district court in opposing summary judgment. And in trying to do so, PACT does, in the district court's words, it tries to rewrite history. The district court recognized that that was not the argument that PACT made. The district court was clear about that in addressing this in the second rehearing motion. And this is not, just to be clear, this is not about a typographical error, because at the exact same- I think there is a bit of a typo in that. I agree with you, there is a bit of a typo, Judge Toronto. How do you correct it? What's that? How do you correct it? Get rid of the ING or put words in front of the word processing? Yeah, so three responses to that, Judge Toronto. The first is, they actually corrected it themselves in the second motion for reconsideration. If you look at Appendix 27,796, they interpreted it the way that we do, which is products sequentially process data. You said 27 what? 27,796, I believe in the second volume of the appendix. So this was their second motion for reconsideration, and in it, they block quoted, and they corrected to read exactly the way that the district court read it and exactly the way that we read it. That's point number one. Point number two is, I'd actually point you to the same motion itself. If you look at the sentence before, so we're now back at Appendix 14,685. If you look at what they said in the sentence before, they said Intel's motion does not explain why the accused products do not also process sequences of data, and in fact, Dr. Conte has offered evidence that the accused products sequentially, the logical implication is that it's processed data, because that's what they just said in the sentence before. And then if you look earlier in the motion at Appendix 14,679, where they were talking about the 047 patent, there they say the products, quote, do sequentially process data, end quote, and they cite the exact same evidence that they cite here. But actually, that's not the most powerful point on this, that they weren't making a capability argument. The most powerful point you can find at Appendix 11,682 to 11,683, that's Volume 1 of the Joint Appendix. That is where, in responding to our summary judgment motion on markings, they specifically and clearly made the argument that the language adapted for and adapted to was not directed to capability. They were arguing exactly the opposite, and they said that it was not enough that a processor device, quote, can be adapted for practicing the limitation. That's Appendix 11,682 to 683. The opposite of what they're now arguing on. I'm not sure it's the opposite. I mean, the problem is that adapted to itself sometimes means capable of. Denying that it's capable of being adapted to is not the same thing as denying that it's capable of performing the function. That's fair, Judge Toronto, and you're right. The term adapted to can take on different meanings. This court addressed that specifically in Aspects Iwear versus Marchand. To the extent that you get past the issue of forfeiture and you're asking the question of what are these claims directed to, Aspects Iwear teaches that you look at, well, how are other words used in neighboring claims? And in this one, I would point you to two things. Number one, the very claim itself also later uses the term capable of operating. So that, under the logic of Aspects Iwear, the fact that you used adapted to or, excuse me, adapted for in one context means it means something different than capable because just a couple lines later in the same claim, it refers to being capable of operating. It's also a different language from the 047 patent. The 047 patent refers to things that are adaptable as opposed to being adapted to. But in all events, I think between their affirmative argument at 11,682 and the clear context from the other statements that they made that I recited and the district courts was in the best position to assess what had been argued to the court and made it very clear and pretty emphatic. At Appendix 27 to 28, this wasn't the argument they made. I'm happy to answer any other questions about this patent, but I'm also happy to turn to the 593 patent at this point. So turning to the 593 patent, Judge Dyke, the district court properly construed the dedicated connection term based on its plain meaning. And that was confirmed by PAC's reexamination statements to require, quote, direct interconnection of a particular processor to a particular memory via a link inaccessible to other devices and memories. That's the district court's interpretation. And PAC reiterated to the patent office that, quote, in the context of electrical components and hardware, the dedicated means, quote, designed to interconnect exclusively. That was their statement at Appendix 33,956. So whether you think it's disclaimer or not is very, very clear. And indeed, their argument to the patent office was this was the plain and ordinary meaning of the term. And so the district court applied the plain and ordinary meaning, construed it entirely consistent with their statements. And then their statements about the few reference itself are confirmatory. What they do with the few reference is they show the examiner that at some sharing was taking place. And because there was some sharing of these lines, that few did not read on the requirement of having a dedicated connection. Now they get up and say, well, what we were really telling the patent examiner was that all of the segments within few are connected. All of the segments within few are shared. That's actually not true. But let's just set that aside for a second. Because clearly the examiner understood that it was enough that some segments within few were shared. And the examiner applying their definition, this is Appendix 33,970, says, quote, the plain and ordinary meaning is designed to directly interconnect exclusively. A portion of the connection between the core and the memory is a shared connection. Hence, the connection is not a dedicated connection as defined above. That's 33,971. That is the examiner. And of course, as this court has recognized in cases like LK versus EBCO and St. Clair versus Canon and Biogen versus GSK, that's very informative as to understanding what it was they were arguing. And that should be the end of this case. What about the very last little argument that even under your construction, there really isn't any shared piece because the shared pieces are these just near the end points and they talk about how they're, I don't know, sometimes maybe always they say they're interfaces. They don't make much of that. My understanding, and just tell me if this is wrong, that the claim says you have to get from the processor to the memory. Their mapping for their infringement were very specific things for the processor and the memory. And these, what they're now calling interfaces, are actually not part of those two end points. I agree with that, Judge. So they have to be in the link. I agree with that, Judge Toronto. That is, the so-called interfaces are not the processor, they're not the memory. And indeed, they actually never presented any evidence to suggest that they were. So if you read their- Well, they did have expert testimony that that was part of the interface. What's missing, I think, is expert testimony that the interface, as it's called, is not part of the pad. I think what's missing, Judge Zak, I agree with that. I think what's missing is evidence that the interface is part of the memory. If you look at Appendix 33,980 to 983, yes, this is their expert, Conti. And the point that he was making was that the so-called secondary bus, that that ends at the interface. That's the only point that he was making. There's no suggestion by him that the- That it's not part of the pad. Right, that it was not part of the secondary bus path. That it wasn't part of the secondary bus path. Because the way the claim is written is that you have data processing cores include a physically dedicated connection to one of the memory units and that that memory unit is also accessible by another of the data processing cores via secondary bus path of the bus system. And his position is that the ring is the only thing that matters for purposes of the secondary bus path. But that doesn't answer the question of, is there actually a physically dedicated connection that runs all the way from the processor to the memory? Because if it's, and it's indisputable that there is sharing in order to get to the memory. Conti essentially concedes this at paragraph 180 of his opinion. They don't have an answer to figure, to what is figure two of the Intel documents where we've got the circle showing the part that is shared. They don't have an answer to that other than to say it doesn't count. And their argument on appeal that it doesn't count is to say, well, maybe a fact finder could find the interface is part and parcel of the memory. But Conti doesn't say that. They have no expert to back them up on that. And indeed, under that approach, if you end up with a world where everything is the interface, well then we win. Because there is no physically dedicated connection at all because there would be literally nothing outside the interface. The entirety of the so-called physically dedicated connection is inside the so-called interface. And so they can't have it both ways. So to kind of summarize this point, their interface argument fails as a matter of law really for two independent reasons. One is it fails under the district court's construction of dedicated connection because the dedicated connection means there can be no sharing at all and it has to run from the processor to the memory and they have no evidence to support a different line drawing. The second reason it fails is because there is no genuine issue of material fact. That is, if you look at the confidential Intel figures, there is indisputably sharing before you get to the so-called interface. I mean, that is plain in the figure two that they rely on. If you look at it, the thing... The district court, I'd make that point. The district court's point at Appendix 44 was really to say that the entire ring infrastructure ends up being shared. That is, while the ring itself is not, if it's going from the processor to the memory, it's got to go through the SIBO and it's got to go through each of the three parts of the SIBO. The district court is absolutely correct about that and the Intel figures on which they rely for their affirmative case demonstrate that. The only last thing I'll say is their so-called inconsistency argument about saying, well, the district court's inconsistent in what it did. First of all, that argument only applies under their claim construction. It doesn't apply under the district court's claim construction, number one. Number two, just to be clear, the district court didn't treat the question of whether or not something was an interface as being a relevant disputed fact. His question was whether or not there were separate paths within the interface. Number one, the understanding... Because that's the claim term. Because that's the claim. Because the claim requires that you have the dedicated connection and the whole idea is if it's dedicated, well, then it can't be shared. I'm happy to address additional questions that the court may have on this. I'm also happy to yield back the balance of my time. Thank you, Judge Steig. Mr. Weiss first. My friend on the other side said that Conte never made the ultimate point that the interface is not part of the connection. Instead, it's part of either the memory unit or the processor. Disagree with that, refer the court to Appendix 33984, which is part of Conte's report. What Conte says is that the fact that there are an overlapping portion at the very end of the road, if you will, does not negate the fact that the co-located CPU core, that's the processor, has a physically dedicated connection with the co-located LLC slice, which is the memory. I think it's helpful. He uses an analogy, which I found helpful. He says, by analogy, a person of skill in the art would understand that different paths can be used to reach Rome by different travelers, even if those travelers are forced to walk up the same final steps to reach the gates of the city. Did he say that the interface is part of the memory? He's saying that the fact that there's this shared insignificant portion at the end does not negate the fact that the co-located CPU core has a physically dedicated connection. What he is saying there is this shared portion does not undermine that there is a physically dedicated connection. That's exactly the point. You have to determine under the claim language, is it part of the connection? He doesn't say it's part of the memory. He's saying it's not part of the connection. You either have to be part of the connection or you have to be part of the memory or part of the processor core. In terms of what the examiner said beyond what we said, under Salazar and other cases, that does not count. We've had no duty under the regulation that this court cited in Salazar to respond to the examiner's statements that went beyond ours. I want to go to the district court's point about this inconsistency. I respectfully disagree because the district court, whatever its claim construction was, when it came time for the district court to apply that to the evidence, the district court said in Intel's products there are only shared segments. There's not even a single uniquely dedicated segment. That is inconsistent, we submit, with his finding at Appendix 9. The key passages are Appendix 44 to 45 is the second order. Appendix 9 is the first. The district court seemed to be applying the claim construction that we think is appropriate there, but he applied it incorrectly to the facts. The segment that we pointed to, again, is this thing in the middle. There is something left of a connection, even if the other parts are part of the memory unit or core. It's the bump or the overpass that goes over the common line. The court has no further questions or comments. Just a caution. The confidentiality markings in the briefs are very carelessly done. They mark as confidential things that are in the district court's unredacted opinion. That's not what you're supposed to do. Understood, Your Honor. Those were mostly at the initiative of Intel, whose confidentiality it was. Not packed, and we respected those, but perhaps inappropriately. I agree that these terms that I've tried to use today are in the district court's order publicly. Thank you, Your Honor. All right. Thank both counsel. The case is submitted. That concludes our session for this morning.